## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

IN RE:      **LIVING HOPE SOUTHEAST, LLC, Debtor**      4:12-bk-11082 E
      CHAPTER 11

## MEMORANDUM OPINION AND ORDER GRANTING IN PART APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSES PURSUANT TO 11 U.S.C. § 503

Now before the Court is an *Application for Payment of Administrative Expenses Pursuant to 11 U.S.C. § 503* (Dkt. #251) ("**Expense Application**") filed by Thomas S. Streetman on behalf of Renee S. Williams (the "**Southwest Trustee**"), the Chapter 7 Trustee of Living Hope Southwest Medical Services, LLC ("**LHSW**"), a creditor of Living Hope Southeast, LLC (**"LHSE"** or the "**Debtor**"). Michael E. Collins, the Chapter 11 Trustee, filed an objection to the Expense Application (Dkt. #286) as did Patricia J. Stanley, on behalf of the United States Trustee ("**UST**") (Dkt. #287). Creditor Dr. James J. Naples also filed an objection. (Dkt. #288). The A.K. Tennessee Irrevocable Trust (the **"A.K. Trust"**), which holds a 99% membership interest in the Debtor, objected as well. (Dkt. #290).

A hearing on the Expense Application was held on September 4, 2013. Robert Gibson and Streetman appeared on behalf of the Southwest Trustee. Michael E. Collins, the Chapter 11 Trustee, appeared on his own behalf. Patricia J. Stanley appeared on behalf of the United States Trustee. Judy Simmons Henry and Charles T. Coleman appeared on

behalf of Dr. James J. Naples.  Kimbro Stephens appeared on behalf of the A.K. Trust.  At the close of evidence, the Court took the matter under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court has jurisdiction to enter a final judgment in the case.  This memorandum constitutes the Court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052; 9014.

## INTRODUCTION

The factual background and history of this Chapter 11 Debtor, as well as certain related entities and individuals, has been described extensively in the *Addendum to: Order Granting Motions to Appoint Trustee* (Dkt. #293) entered on July 9, 2013 (the **"Addendum"**) and other orders and opinions entered in this case.  The Court will not repeat that background here except to provide necessary context for analyzing the Expense Application.

The Debtor, Living Hope Southeast, LLC, filed bankruptcy on February 27, 2012, to continue operating while managing litigation in other forums.  Specifically, the Debtor faced a lawsuit in Miller County, Arkansas filed by Pinewood Enterprises, L.C. (**"Pinewood"**) in 2006 (the **"Miller County Case"**).[1]  Naples is successor-in-interest to Pinewood.[2]  The Debtor was also a defendant in an adversary proceeding brought by the

---

[1] The Miller County Case is stayed by the Debtor's bankruptcy; this Court denied relief from stay in an order entered January 29, 2014.  (Dkt. #450).  That order is currently on appeal to the District Court for the Eastern District of Arkansas. *Naples v. Williams*, No. 4:14-cv-201-JLH.

[2] Naples sold his membership interest in Pinewood effective December 31, 2012, but assigned to himself all causes of action, including the pending case against Debtor and others in

Southwest Trustee styled *Williams v. Living Hope Southeast (In re Living Hope Southwest)*, No. 4:09-ap-7023 (the **"Southwest AP"**).  Twice, the Debtor settled the Southwest AP, but the court's approval of those settlements was reversed in separate appeals brought by Naples.  In January 2013, the Honorable James G. Mixon held a trial in the Southwest AP and entered judgment in favor of the Southwest Trustee.  The Southwest Trustee now holds a liquidated claim in the amount of $1.19 million (the **"Southwest Judgment"**).

As described more thoroughly in the Addendum, in late 2012 and early 2013, certain parties – specifically, Kimbro, and a board created to control the Debtor consisting of Greg Stephens (Kimbro's brother), Steve Ward (Kimbro and Greg's uncle), and Ken Stephens (Kimbro and Greg's father) – attempted to take control of the Debtor.  They disputed how to defend Southwest AP, and specifically, whether Kimbro should be allowed to intervene in the Southwest AP.  Kimbro and the alleged board ultimately attempted to terminate Debtor's counsel, Jim Smith and the firm of Smith, Akins & Gladden, P.A. (**"Smith Akins"**)

---

Miller County Circuit Court which is the basis for any claim Naples has in this case.  *See Order Denying Motion for Relief* (Dkt. #450) entered on January 29, 2014.  The Court granted Naples's request to substitute for Pinewood with respect to pleadings filed before December 31, 2012, the effective date of the sale.  The Court denied Naples's request to substitute for Pinewood with respect to pleadings filed by Pinewood after December 31, 2012.  *See generally Order Denying in Part Motion to Substitute* (Dkt. #316) entered on July 16, 2013.  The objection to the Expense Application was filed by Naples as an individual.

during the Southwest AP trial.[3]  Smith Akins moved to withdraw, and those controlling the Debtor sought to hire Jeannette Robertson as counsel for the Debtor.[4]

On January 16, 2013, the day after the Southwest AP trial, Kimbro and Greg attempted to obtain a consent judgment against the Debtor in favor of the Estate of Wanda Stephens, Living Hope Institute (**"LHI"**), and Ameriwest Health Services, Inc. (**"Ameriwest"**)[5] in the Miller County Case.  These entities were cross-claimants in the Miller County Case; the cross-defendants were the Debtor, Kimbro, his former wife Alice, Mike Grundy and various related entities of the Stephenses.  The proposed consent judgment agreed to the entry of a consent judgment granting LHI's attorneys a $50,000 judgment, and granting cross-claimants Ameriwest and the Estate of Wanda Stephens a $1.2 million judgment plus pre-judgment interest from January 1, 2011, at 10%, and post-judgment interest at the same rate, and court costs.  This proposed consent judgment also granted Ameriwest and the Estate of Wanda Stephens a constructive trust and equitable lien on the assets of the Debtor and the A.K. Trust.[6]

_____

[3] *See Order Approving Fee Application* entered on March 21, 2014 (Dkt. #485).

[4] The Court did not approve the substitution, stating that the Court would not approve decisions made by those whose actions led to motions to appoint a trustee.  *See Order Denying Motion to Expedite Ruling on Motion to Substitute Counsel For The Debtor* entered on March 1, 2013 (Dkt. #192).  Despite Smith's efforts to withdraw, an order allowing Smith Akins to withdraw as the Debtor's attorney was not entered until June 21, 2013.  (Dkt. #269).

[5] Greg and Kimbro's mother, Wanda, founded LHI, a provider of psychiatric services.  LHI ceased operations in 2007, and Greg became president of LHI when his mother died in 2010.  Ameriwest is the shareholder of LHI (and therefore successor-in-interest to LHI); Greg serves as President of Ameriwest.

[6] As described in the Addendum (at 5-6), this Court found that the consent judgment was an attempt to place all of the Debtor's assets in a constructive trust for the benefit of family

4

On January 25, 2013, the Southwest Trustee filed her motion to appoint a trustee in this Chapter 11 case, and on February 12, 2013, the U.S. Trustee filed its motion to appoint a trustee. The motions to appoint a trustee were filed following Kimbro and Greg's attempt to obtain a constructive trust on the Debtor's assets, along with other actions taken by Kimbro, as described in detail in the Addendum, which include: the alleged creation of a "board of trustees" to control the Debtor; this board's firing of Debtor's counsel, Smith, in the midst of the Southwest AP trial; and Kimbro's filing of a lawsuit in District Court on the Debtor's behalf with no court approval of Kimbro as counsel or relief from the stay to file the lawsuit.

Hearings on the motions to appoint a trustee took place on February 14, February 18, March 8, and March 11 of 2013 (the **"Trustee Appointment Hearings"**). The Court did not allow the substitution of Robertson for Smith Akins pending its decision on the appointment of a trustee. However, Robertson was allowed to represent the Debtor during these hearings although she was not approved as counsel for the debtor-in-possession. The Court later held a hearing on the Debtor's applications to hire Robertson, and denied the applications finding that Robertson was personally disinterested and acted in good faith in seeking to be hired, but that she represented an adverse interest despite her subjective belief that she did not. *See Order* entered August 28, 2013 (Dkt. #358).

---

owned entities before Judge Mixon could possibly impose a constructive trust on the Debtor's assets in favor of the Southwest Trustee for the benefit of all of Southwest's creditors, including Pinewood/Naples. The Court also found that Greg and Kimbro executed the consent judgment and attempted to file it to create a debt owed by the Debtor to the entities represented by Greg, and to impose a constructive trust on the Debtor's assets so that the assets were within the control of the Debtor's family and outside the reach of the Southwest Trustee or other creditors.

Robertson also conducted settlement negotiations between the various parties during the same time period as the Trustee Appointment Hearings. As the Court described in its Addendum:

> Although Kimbro (or his entities) and Pinewood could not reach a settlement for the seven years of their ongoing litigation, when the Southwest Trustee and the U.S. Trustee filed motions to appoint a trustee in this case and those motions were set for hearing, Pinewood, Kimbro and Greg (on behalf of LHI, Ameriwest and the Estate of Wanda Stephens), finally put aside their pronounced differences and worked on a settlement. Because the Southwest Trustee had a duty to the estate's creditors, and because the Trustee was not offered a reasonable amount given the strength of her claim (Judge Mixon had already entered a judgment for $1.19 million), the Southwest Trustee could not agree to the proposed settlements, as described later in this Addendum. Even though the parties testified they were in the process of negotiating a settlement which was to ultimately be the basis of a Chapter 11 plan, the terms of the proposed settlement did not reflect the merit of the parties' respective rights to collect from the Debtor. Basically, under the proposed settlement, the Southwest Trustee's claim was cut by more than half while Stephens family members retained control of the Debtor, and Pinewood's unliquidated claim, although reduced to a lesser extent, was to be paid without further risk and expense of complex litigation to establish its claim.

Addendum at 8-9. The settlement sought to settle not only the claim held by the Southwest Trustee and the claim asserted by Naples, but attempted to settle claims asserted by Greg Stephens on behalf of LHI and the Estate of Wanda Stephens. Prior to the entry of the Southwest Judgment and the motions to appoint a trustee, the only active creditors in this case were Naples and the Southwest Trustee. While Greg (on behalf of these entities) had asserted cross-claims against the Debtor in the Miller County Case, he did not file claims or appear at any hearings in this case until the Trustee Appointment Hearings had begun. As the representative for the Estate of Wanda Stephens, Greg filed an unsecured claim for $1,200,000 on March 7, 2013, based on alleged tortuous interference by Southeast with an

6

employment contract between LHI and Wanda Stephens entered on April 22, 2010 (two pages of an employment contract were attached to this claim; Greg testified there was an additional page that is missing). LHI filed an unsecured claim for $1,250,000 on March 7, 2013, based on this statement: "LHSE acting through Kimbro Stephens and Alice Stephens, converted the business operating of LHI to that of LHSE."

During the four days of the Trustee Appointment Hearings, the motions to appoint a trustee were prosecuted by Stanley on behalf of the UST, and by Streetman and Gibson on behalf of the Southwest Trustee. The motions were strongly opposed by Robertson as proposed counsel for the Debtor, Naples, the A.K. Trust (represented by Kimbro), LHI and Ameriwest (represented by Steve Gershner on behalf of Greg Stephens), and Greg, *pro se*, as the executor of his mother's estate. On April 19, 2013, the Court granted the motions to appoint a Chapter 11 Trustee, finding, in part, that

> . . . the Court has serious reservations about the validity of any claim by LHI, Ameriwest or the Estate of Wanda Stephens – the entities on whose behalf Greg appears. Claims were only just filed on behalf of those entities after two days of hearing on the Motions to Appoint Trustee. Although the proposed consent judgment Greg caused to be filed in Miller County was almost immediately withdrawn once bankruptcy attorneys warned him of bankruptcy code violations, the scheme to include Greg as a creditor of the Debtor continues in the form of settlement proposals in which Pinewood and Greg would be paid the bulk of their claims while the Southwest Trustee – who now has a liquidated claim of $1,190,000 – would receive no more than $750,000, if that.

*Order Granting Motions to Appoint Trustee* at 14. Until the Trustee Appointment Hearings, Naples and the Southwest Trustee had battled over their respective claims to this Debtor. Then, in the late Winter and early Spring of 2013, Greg, Kimbro and other Stephens family members asserted control of the Debtor with no regard for the Debtor's

fiduciary duties to its bankruptcy estate, and the Stephenses joined Naples in an effort to defeat the Southwest Trustee's claim.  To achieve their ends, the Stephenses hired new counsel unfamiliar with the long history of the case, and worked on proposing a settlement with Naples that favored the Stephens family and Naples over the Southwest Trustee.[7]  To effectuate such a settlement, these parties joined forces to oppose the appointment of a trustee.  Given this realignment (the Stephens family joining Naples) to oppose the appointment of a trustee and promote their settlement, the hearing on these issues became extremely complex.  It is the complexity of the issues and the difficulty of presenting facts to unravel this complexity that made the Southwest Trustee's participation along with the UST necessary.

In her Expense Application, the Southwest Trustee requests the following expenses be afforded administrative expense treatment under subsections 503(b)(3)(D) and (b)(4) of the Bankruptcy Code ("**Code**") in connection with the following: (1) the Winter and Spring 2013 settlement negotiations with the Debtor, creditors, and other parties; (2) her opposition to proposed substitute counsel for the Debtor; and (3) her motion to appoint a Chapter 11 Trustee.  She specifically seeks an administrative expense claim for: (1) $314.64 for her mileage expenses; (2) $38,500 in legal fees charged by her counsel

---

[7] The Addendum describes the settlement negotiations (at pages 62-71) in detail and concludes that Naples and the entities represented by Greg Stephens were favored over the Southwest Trustee. *See also Order Denying Motion to Alter or Amend* entered July 17, 2013 (Dkt. #318).

Streetman; (3) $24,396.00 in legal fees charged by Robert B. Gibson, III ("**Gibson**"), Streetman's co-counsel; and (4) $2,708.11 in general litigation expenses.[8]

After carefully reviewing the Expense Application, the pleadings of the parties, and the evidence presented at the trial on the application, the Court grants the application in part.  For the reasons described herein, only those expenses associated with the appointment of a Chapter 11 Trustee are approved as administrative expenses to be paid from the Debtor's estate pursuant to subsections 503(b)(3)(D) and (b)(4) of the Code.[9]

## DISCUSSION

Because administrative expenses are priority claims which are paid directly out of the bankruptcy estate and may diminish the recovery of creditors, the Code's administrative expense provisions are strictly construed.  *Mfrs. Hanover Trust Co. v. Bartsh (In re Flight Transp. Corp. Secs. Litig.)*, 874 F.2d 576, 581 (8th Cir. 1989); *Rice v. Bennett (In re Supermarket Investors, Inc.),* 441 B.R. 333, 343 (Bankr. E.D. Ark. 2010).

---

[8] At trial, counsel for the Southwest Trustee conceded that entries totaling approximately $7,000 in legal fees and expenses were not related to the appointment of a Chapter 11 Trustee. Counsel indicated to the Court that the Southwest Trustee no longer sought administrative expense treatment for those entries.  Accordingly, those entries are disallowed in addition to several other types of entries described below.  The attached Appendix lists only those fees and expenses of counsel and the Southwest Trustee that are allowed.

[9] The Court notes that its inquiry here is limited to the question of whether the Southwest Trustee's services and legal representation provided a benefit to the LHSE estate and its creditors.  To the extent that the Court denies the Southwest Trustee's Expense Application, nothing precludes her or her counsel from seeking reimbursement from the LHSW estate.  The standard for awarding a creditor an administrative expense claim is very different than the standard applied to a Chapter 7 Trustee and her counsel in a Chapter 7 case.  *See* 11 U.S.C. §§ 503(b)(2); 330.

"A finding of entitlement under § 503(b)(3)(D) is a prerequisite to an allowance under subsection (b)(4)."  *In re Serv. Merch. Co., Inc.*, 256 B.R. 738, 741 (Bankr. M.D. Tenn. 1999) (citing *In re Am. Preferred Prescription, Inc.*, 194 B.R. 721, 724 (Bankr. E.D.N.Y. 1996)).  The lengthier § 503(b)(3)(D) analysis only applies to the relatively small mileage expenses incurred by the Southwest Trustee as opposed to her much larger attorneys' fees which may be compensable under § 503(b)(4).  However, the Court views the reasons supporting the Southwest Trustee's award of expenses under § 503(b)(3)(D) as integral to the Court's award of her counsel's compensation under § 503(b)(4) and is accordingly afforded a thorough analysis.  The Court will now address these provisions in turn.

### Section 503(b)(3)(D) Administrative Expenses

Section 503(b)(3)(D) provides administrative expense treatment for "actual, necessary expenses," other than compensation for attorney services, incurred by a creditor "in making a substantial contribution in a case under . . . chapter 11" of the Code.  11 U.S.C. § 503(b)(3)(D).  No one disputes that the Southwest Trustee is a creditor in this Chapter 11 case, which leaves two statutory inquiries: (1) has the Southwest Trustee made a "substantial contribution" in this case? and (2) were her expenses "actual" and "necessary"?

### 1.    Substantial Contribution

The burden is on the party seeking administrative expense treatment to demonstrate by a preponderance of the evidence that a "substantial contribution" was made.  *In re NWFX, Inc.*, 267 B.R. 118, 251 (Bankr. W.D. Ark. 2001).   Although "substantial

10

contribution" is not defined by the Code, the Eighth Circuit Court of Appeals has held that the appropriate test is "whether the services substantially contributed to a successful result, that is, an actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders." *Flight Transp.*, 874 F.2d at 582 (quoting *In re Jensen–Farley Pictures, Inc.*, 47 B.R. 557, 569 (Bankr. D. Utah 1985)); *see also In re Diamonds Plus, Inc.*, 233 B.R. 829, 833 (Bankr. E.D. Ark. 1999) ("[T]he phrase 'substantial contribution' in section 503 means a contribution that is considerable in amount, value, or worth.") (internal quotations omitted). A substantial contribution is one that fosters and enhances the progress of a reorganization rather than retards it. *Flight Transp.*, 874 F.2d at 583.

The Expense Application can be roughly divided into three categories of services which the Southwest Trustee maintains provided a substantial contribution to the estate. These three categories are: (1) services for attempting a settlement with the Debtor in the late Winter and early Spring of 2013; (2) services for opposing the Debtor's proposed substitute counsel; (3) and services for the appointment of a Chapter 11 Trustee. As discussed below, the Court finds that only those services directly related to the appointment of a Chapter 11 Trustee provided a substantial contribution in this case.

### a. Services for Attempting a Settlement with Debtor Are Not Compensable from the Estate.

The Court first finds that the Southwest Trustee's services for attempting a settlement with the Debtor did not provide a substantial contribution in this case. Although the Southwest Trustee argued that these services were incurred in connection with the

11

appointment of a Chapter 11 Trustee, the Court disagrees.  Although the services were related in that the settlement negotiations provided further cause for the appointment of a trustee (as explained in the Addendum), the evidence presented at trial established that the settlement negotiations were undertaken by the Southwest Trustee strictly on behalf of the creditors of the LHSW estate and did not result in a demonstrable benefit to the Debtor's estate.

The substance of the settlement proposals and counterproposals made in February and March 2013 were to resolve claims against the Debtor's estate.  None of the proposals and counterproposals presented to the Court address the appointment of a Chapter 11 Trustee; Streetman testified that this was because the other negotiating parties were "unalterably opposed" to the appointment of a trustee.   Streetman continued to negotiate on behalf of the Southwest Trustee with Robertson, even though he testified to believing that (1) she was representing the interests of the Debtor's principals rather than the Debtor and (2) negotiating for the appointment of a trustee was a nonstarter.  The UST was not involved in any of the settlement negotiations and nothing in the settlement proposals would have caused the UST's motion to appoint a Chapter 11 Trustee to be withdrawn.

In sum, the Court finds that the nature and substance of the settlement negotiations concerned the Southwest Trustee maximizing the recovery on LHSW's claim against the estate rather than replacing the Debtor's management.  A substantial contribution is something more than *satisfying performance of fiduciary duties*.  *Flight Transp.*, 874 F.2d

at 581.  All claimed administrative expenses for services related to settlement negotiations with the Debtor and its creditors are disallowed as an administrative expense claim.[10]

**b.      Services for Opposing Debtor's Proposed Substitute Counsel Are Not Compensable from the Estate.**

The Court also finds that the Southwest Trustee's services for opposing Robertson as the Debtor's proposed substitute counsel did not provide a substantial contribution in this case.  For these reasons explained below, the Court finds that the demonstrable benefit in opposing Robertson as substitute counsel was provided by the UST and by the Chapter 11 Trustee rather than by the Southwest Trustee.

The Southwest Trustee did not file any objections to the firing of James E. Smith Jr., the Debtor's prior counsel, and never formally objected to the hiring of Robertson, the Debtor's proposed substitute counsel; only the UST and the appointed Chapter 11 Trustee formerly objected to the hiring of Robertson.[11]  Further, at the July 18, 2013 hearing on Robertson's employment application, neither the Southwest Trustee nor her counsel argued or presented evidence in opposition.  Stanley, on behalf of the UST, and Collins, on behalf of the Chapter 11 Trustee, were the only parties to contest Robertson's employment.

---

[10] Again, this order does not preclude the Southwest Trustee from seeking administrative expense treatment for the disallowed expenses in the LHSW bankruptcy case.

[11] The Southwest Trustee filed an objection to Robertson's *Amended Motion to Expedite Ruling on Motion to Substitute Counsel for Debtor*, but the substance of this motion reflected a displeasure with a settlement proposal rather than Robertson's disinterestedness under 11 U.S.C. § 327.  In any event, the objection was only to Robertson's expedited motion rather than to her original employment application.

The Court finds that the Southwest Trustee failed to meet her burden of showing that she and her counsel provided any contribution, let alone a substantial one, in opposing Robertson's employment application. Consequently, the Southwest Trustee's claimed administrative expenses for services for opposing Robertson as substitute counsel are disallowed.[12]

### c.   Services for Appointment of Trustee Are Compensable From the Estate.

Lastly, the Court finds that the Southwest Trustee's services for the appointment of a Chapter 11 Trustee provided a substantial contribution to this case. Although unusual, a creditor's efforts to obtain the appointment of a Chapter 11 trustee have been found to constitute a substantial contribution. *See, e.g.*, *In re On Tour, LLC*, 276 B.R. 407, 418 (Bankr. D. Md. 2002); *In re Catalina Spa & R.V. Resort, Ltd.*, 97 B.R. 13, 18 (Bankr. S.D. Cal. 1989); *In re Humphreys Pest Control Co., Inc.*, No. 82–05539S, 1990 WL 191859, at *3 (Bankr. E.D. Pa. Nov. 30, 1990), *aff'd*, 1991 WL 136195 (E.D. Pa. July 18, 1991).[13] The Court finds this case to be one of those special instances for the following reasons.

The Southwest Trustee filed her motion to appoint a Chapter 11 Trustee on January 25, 2013, attaching various documentary evidence in support. The Southwest Trustee's motion brought to the Court's attention, for the first time, evidence supporting a "for

---

[12] Again, this has no bearing on expenses that may be collectable from the LHSW estate.

[13] There are several decisions in involuntary bankruptcy cases awarding an § 503(b)(3)(D) administrative expense for the appointment of a Chapter 11 Trustee. *See, e.g.*, *In re Stoecker*, 128 B.R. 205, 211 (Bankr. N.D. Ill. 1991); *In re Paolino*, 71 B.R. 576, 580 (Bankr. E.D. Pa. 1987); *In re Schneider*, No. 06–50441 MM, 2007 WL 2688812, at *6 (Bankr. N.D. Cal. Sept. 13, 2007).

cause," mandatory appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a). This evidence was accumulated through the Southwest Trustee's personal knowledge as a Chapter 7 Trustee in the LHSW bankruptcy. The UST filed its own motion to appoint a Chapter 11 trustee on February 13, 2013, a day before the hearing scheduled on the Southwest Trustee's motion. Although the UST's motion included additional reasons for the appointment of a trustee—namely, the attempt to hire Robertson and the animosity between the Debtor and its creditors—the motion, by and large, adopted the Southwest Trustee's motion including her exhibits.

Over the four day trial on the motions to appoint a trustee, the Southwest Trustee and the UST presented separate evidence, germane to their motions. However, both parties worked together closely and effectively without duplicating the efforts of one another. The extent and complexity of the allegations as well as litigiousness of the parties objecting to the motions to appoint a trustee, made this case too unwieldy for any one party to prosecute. This point is evidenced by the Court's 72-page addendum to its order approving the motions to appoint a Chapter 11 trustee.

The undisputed testimony was that the Southwest Trustee and her counsel were the primary catalysts in obtaining the appointment of a Chapter 11 Trustee, see *Humphreys*, 1990 WL 191859, at *3, and their efforts were successful. *See On Tour*, 276 B.R. at 419. *Cf. In re Keeley & Grabanski Land P'ship*, No. 10–31482, 2013 WL 4170414, at *9 (Bankr. D.N.D. Aug. 15, 2013) ("Because the Court denied the motion [to appoint a Chapter 11 Trustee], it cannot be said that the motion—or the work related to it— substantially contributed to the case."). The appointed Chapter 11 Trustee has protected

15

the Debtor's assets from any further attempts to encumber them by Debtor's principals (such as the consent judgment sought by Greg and Kimbro in the Miller County Case).

Having found that the Southwest Trustee's efforts to appoint a Chapter 11 trustee provided a substantial contribution to the estate, the Court now explains why the objections raised at trial fail.

First, some of the objectors argued that the Southwest Trustee and her counsel did not make a "contribution" to the estate because her services did not result in cash or other assets going into the estate. Nothing in the plain language of § 503(b)(3)(D) requires such an interpretation. *See Williams v. Cheves (In re Williams)*, 49 F. App'x 845, 850 (10th Cir. 2002) (unpublished) ("While finding additional assets of the estate may be a classic form of making a substantial contribution, it is not the only one. For example, courts have found that efforts to secure the appointment of a Chapter 11 trustee made a substantial contribution.") (citing cases). Helping to preserve the estate's assets is no less a contribution than acquiring money for the estate.

Second, the objectors argued that the more exacting substantial contribution standard used in *Lebron v. Mechem Fin., Inc.*, governs this case. In *Lebron*, the Third Circuit Court of Appeals stated:

> 'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests and which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

27 F.3d 937, 944 (3d Cir. 1994). However, "[n]othing in § 503(b) indicates that a creditor's motivation has any relevance in whether the creditor can recover fees and expenses under

16

§ 503(b)." *Cellular 101, Inc. v. Channel Commc'ns, Inc. (In re Cellular 101, Inc.)*, 377 F.3d 1098, 1098 (9th Cir. 2004) (Brunetti, J., concurring). Moreover, at least two circuit courts of appeals have rejected a substantial contribution analysis that considers the creditor's self-interest. *See Speights & Runyan v. Celotex Corp. (In re Celotex Corp.)*, 227 F.3d 1336, 1338 (11th Cir. 2000); *Hall Fin. Grp. v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 673 (5th Cir. 1997); *see also Cellular 101*, 377 F.3d at 1097–98 (any concern that creditors benefitted from their own efforts was "outweighed by the extent of the benefit those efforts conferred on the estate"). The Eighth Circuit Court of Appeals has not adopted *Lebron* or a motive-based substantial contribution inquiry, and the Court declines to adopt one here.

Moreover, the court in *Lebron* recognized that "[m]ost activities of an interested party that contribute to the estate will also . . . benefit that party to some degree, and the existence of a self-interest cannot in and of itself preclude reimbursement." 27 F.3d at 944. Therefore, even if the Southwest estate benefitted from the appointment of a Chapter 11 Trustee, that alone would not preclude reimbursement under *Lebron*. The Court has already held that the appointment of a Chapter 11 trustee would protect the Debtor's assets from its principals. *See Order Appointing Trustee; Addendum*. While the Southwest estate benefitted from her efforts, this benefit was outweighed by the benefit conferred on the estate and the LHSE creditors as a whole. The Court finds the Southwest Trustee's participation in the Trustee Appointment Hearings was vital due to the concerted opposition and involvement of the other parties. Therefore, the Court finds that the

17

Southwest Trustee and her counsel's claimed administrative expenses for services securing the appointment of a Chapter 11 Trustee provided a substantial contribution in the case.

### 2.      Actual and Necessary Expenses

Although the Southwest Trustee's efforts in securing the appointment of a trustee provided a substantial contribution in the case, only those services that were actual and necessary qualify for administrative expense treatment under § 503(b)(3)(D).  As noted by the Fifth Circuit Court of Appeals:

> This provision requires the bankruptcy judge to scrutinize claimed expenses for waste and duplication to ensure that expenses were indeed actual and necessary. It also requires the judge to distinguish between expenses incurred in making a substantial contribution to the case and expenses lacking that causal connection, the latter being noncompensable. Necessarily, the bankruptcy court enjoys broad discretion in making these determinations.

*DP Partners*, 106 F.3d at 673–74.  The Court reviewed every entry on the itemizations submitted with the Expense Application.  The Court then created a spreadsheet listing the expenses qualifying as administrative expenses.  This spreadsheet is attached to this Opinion as an Appendix, the first page of which details the Southwest Trustee's allowed expenses of $246.24 which are directly related to the appointment of a Chapter 11 Trustee and were actual and necessary in making her substantial contribution in this case.  Accordingly, $246.24 of the $314.64 requested by the Southwest Trustee for mileage expenses qualify as a § 503(b)(3)(D) administrative expense.

### Section 503(b)(4) Administrative Expenses

Having concluded the Southwest Trustee is entitled to a § 503(b)(3)(D) administrative expense claim, the Court now turns to whether her counsel is entitled to an

administrative expense claim for services provided under § 503(b)(4).  Section 503(b)(4)

provides an administrative expense for:

> reasonable compensation for professional services rendered by an attorney .
> . . of an entity whose expense is allowable under [§ 503(b)(3)(D)], based on
> the time, the nature, the extent, and the value of such services, and the cost
> of comparable services other than in a case under this title, and
> reimbursement for actual, necessary expenses incurred by such attorney . . .
> .

11 U.S.C. § 503.  The standard for awarding fees under § 503(b)(4) is identical to the

standard in § 330(a)(1) which provides for payment of attorney fees for counsel to the

bankruptcy trustee.  *Celotex*, 227 F.3d at 1341 (citing 11 U.S.C. § 330(a)(1)); *see also On

Tour*, 276 B.R. at 413.

Services rendered by approved counsel must be actual, necessary, and reasonably

likely to benefit the debtor's estate or necessary to the administration of the case to be

compensable under § 330.  *See generally In re Berg*, 268 B.R. 250 (Bankr. D. Mont. 2001).

To determine reasonable compensation under § 330, bankruptcy courts are generally

required to apply the lodestar method.  *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729,

736 (B.A.P. 8th Cir. 1997) (citing *P.A. Novelly v. Palans (In re Apex Oil Co.)*, 960 F.2d

728, 731 (8th Cir. 1992)).  The lodestar method multiplies the reasonable hourly rate by

the reasonable number of hours expended on the subject matter.  *Stalnaker v. DLC, Ltd.*,

376 F.3d 819, 825 (8th Cir. 2004); *Bachman v. Laughlin (In re McKeeman)*, 236 B.R. 667,

671 (B.A.P. 8th Cir. 1999).  To determine the reasonableness of rates and hours, courts

apply the factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th

Cir. 1974). *McKeeman*, 236 B.R. at 671.[14]  Compensation "will be denied to the extent the services rendered . . . did not benefit the estate."  *Kula*, 213 B.R. at 741 (quoting *Keate v. Miller (In re Kohl)*, 95 F.3d 713, 714 (8th Cir. 1996)).  The applicant bears the burden of proof as to the reasonableness of requested compensation.  *In re Curtis*, 70 B.R. 712, 713 (Bankr. E.D. Ark. 1987); *see also Kula*, 213 B.R. at 736.

The objectors argue that the legal fees incurred for the settlement negotiations and for opposing Robertson were not related to the appointment of the Chapter 11 Trustee and are unreasonable.  For the reasons already discussed in this opinion, the Court agrees.  These fees were incurred in furtherance of the Southwest Trustee's own interests and provided no benefit to the estate.  Section 503(b)(4) "do[es] not change the basic rule that an attorney must look to his own client for payment."  *In re Granite Partners*, 213 B.R. 440, 445 (Bankr. S.D.N.Y. 1997).  Therefore, claimed § 503(b)(4) expenses for legal services that do not directly relate to the appointment of the trustee are denied.

The objectors also argue that those legal fees and expenses related to the appointment of the trustee are unreasonable.  They contend that Streetman and Gibson's

---

[14] The *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kula*, 213 B.R. at 738.

efforts were duplicative, that clerical matters were improperly billed, and that the time spent on certain matters was excessive.  The Court has scrutinized the Expense Application and disallowed a few isolated entries as duplicative or excessive; otherwise, these objections are unfounded.  Moreover, applying the lodestar method, the Court finds that Streetman and Gibson charged a reasonable hourly rate and spent a reasonable number of hours on the litigation to appoint a Chapter 11 trustee.

The Court reviewed every entry on the itemizations submitted with the Expense Application and created the attached Appendix listing those expenses that qualify for administrative expense treatment under § 503(b)(4).  On the pages entitled Streetman's Allowed Fees, $28,262.50 of Streetman's requested $38,500 in legal fees are allowed as administrative expenses.[15]  On the pages entitled Gibson's Allowed Fees, $14,412.00 of Gibson's requested $24,396 in legal fees are allowed as administrative expenses.  On the pages entitled Streetman-Gibson Allowed Expenses, $1,655.17 of the requested $2,708.11 in litigation expenses are allowed as administrative expenses.  The balance of the Southwest Trustee's Expense Application is denied.

## CONCLUSION

After carefully reviewing the Expense Application, and the objections to it, it is hereby

---

[15] The Court notes that Streetman's 52 years of experience as an attorney is reflected in the minimal time he spent preparing for trial (as listed on the itemizations attached to his Expense Application).

**ORDERED** that the Expense Application is **GRANTED in PART**; those expenses

and fees listed on the attached Appendix are allowed as administrative expenses.

**IT IS SO ORDERED.**

Audrey R. Evans
United States Bankruptcy Judge
Dated:  04/15/2014

cc:     all parties registered to receive notice through ECF

# APPENDIX

## Southwest Trustee's Allowed Expenses

| Date | Staff | Description | Miles | Rate | Charges | Pg# Exh B |
|------|-------|-------------|-------|------|---------|-----------|
| 2/14/2013 | RW | Travel from Hot Springs to Little Rock | 108 | $0.57 | $61.56 | 1 |
| 2/18/2013 | RW | Travel from Hot Springs to Little Rock | 108 | $0.57 | $61.56 | 1 |
| 3/8/2013 | RW | Travel from Hot Springs to Little Rock | 108 | $0.57 | $61.56 | 1 |
| 3/11/2013 | RW | Travel from Hot Springs to Little Rock | 108 | $0.57 | $61.56 | 1 |

Total Expenses - Renee S. Williams (Southwest Trustee)     **$246.24**

[1] This Appendix was created by the court to list all reasonable and necessary fees and expenses which are allowed as administrative expenses pursuant to § 503(b)(3)-(4).

**Streetman's Allowed Fees**

| Date | Staff | Description | Hours | Rate | Charges | Pg# Exh A |
|------|-------|-------------|-------|------|---------|-----------|
| 1/25/2013 | TSS | Prepare Motion to Appoint Trustee | 0.7 | $350.00 | $245.00 | 1 |
| 1/25/2013 | TSS | File Motion to Appoint Trustee | 0.2 | $350.00 | $70.00 | 2 |
| 1/25/2013 | TSS | Research cases on appt tt in Ch11 & proof required | 3.25 | $350.00 | $1,137.50 | 2 |
| 1/29/2013 | TSS | Prepare and send email to MBM - time estimate | 0.15 | $350.00 | $52.50 | 3 |
| 1/30/2013 | TSS | Rcv & rev email from MBM: thank you for letting me know | 0.1 | $350.00 | $35.00 | 4 |
| 2/12/2013 | TSS | Locate organize & label Trustee's exhibits 1 -11 for introduction at hearing to appoint independent tt | 1.5 | $350.00 | $525.00 | 6 |
| 2/12/2013 | TSS | Prepare for 2/14 hearing in LHSE independent tt | 1.25 | $350.00 | $437.50 | 6 |
| 2/13/2013 | TSS | Travel from Crossett to LR | 2.5 | $350.00 | $875.00 | 7 |
| 2/14/2013 | TSS | Prepare for hearing | 0.5 | $350.00 | $175.00 | 7 |
| 2/14/2013 | TSS | Trial on Motion to appoint tt from 9am to 4:45pm; conf w Tucker & sep conference w Gershner to discuss interest in proposing reorg plan by separate clients | 7.25 | $350.00 | $2,537.50 | 7 |
| 2/14/2013 | TSS | Travel from LR to Crossett | 2.5 | $350.00 | $875.00 | 8 |
| 2/15/2013 | TSS | Prepare & send email RE RSW/LHSE - We did not come close to completing trial on appointment of tt for LHSE although it lasted until 5pm.  We go back Monday (fed holiday) & we may get through but even so, it will last another full day.  I expect Judge Evans to direct UST to appoint a tt | 0.2 | $350.00 | $70.00 | 8 |
| 2/15/2013 | TSS | Prepare & send email to Gershner re RSW/LHSE attached are Williams exhibits 12 & 13 s requested | 0.2 | $350.00 | $70.00 | 8 |
| 2/18/2013 | TSS | Attend 2nd day trial appoint tt 9am - 5:20pm less lunch | 8.3 | $350.00 | $2,905.00 | 9 |
| 2/18/2013 | TSS | Prepare for hearing | 0.5 | $350.00 | $175.00 | 9 |
| 2/18/2013 | TSS | Travel from Crossett to LR | 2.5 | $350.00 | $875.00 | 9 |
| 2/18/2013 | TSS | Travel from LR to Crossett - two hail storms and blinding rain & construction | 2.8 | $350.00 | $980.00 | 9 |

**Streetman's Allowed Fees**

| Date | Staff | Description | Hours | Rate | Charges | Pg# Exh A |
|------|-------|-------------|-------|------|---------|-----------|
| 2/22/2013 | TSS | Rev additional doc/records for possible exhibit at 3/8 hearing ; call Williams at home & cell left voicemail message | 0.9 | $350.00 | $315.00 | 10 |
| 2/26/2013 | TSS | Long phone conv w Smith to discuss cross examination of Kimbro & Naples on 3/8 | 0.5 | $350.00 | $175.00 | 10 |
| 3/4/2013 | TSS | Prepare and send email from Evans settled: time est - I think we are looking at another full day | 0.15 | $350.00 | $52.50 | 11 |
| 3/4/2013 | TSS | Rcv & rev email from Judy : re trial matters - because of number of matters on docket I suspect that it will take two more days of trial to address all of them | 0.15 | $350.00 | $52.50 | 11 |
| 3/4/2013 | TSS | Rcv & rev email from Judy: special Setting not a problem thanks for clarifying | 0.15 | $350.00 | $52.50 | 11 |
| 3/4/2013 | TSS | Called Smith left voice message | 0.1 | $350.00 | $35.00 | 12 |
| 3/4/2013 | TSS | Rec & rev email from Judy: Conflicting hearing dates 3/8 & 3/14 please confirm hearing date | 0.15 | $350.00 | $52.50 | 12 |
| 3/4/2013 | TSS | Telephone call to Smith to discuss 3/5 & 3/8 hearing | 0.3 | $350.00 | $105.00 | 12 |
| 3/4/2013 | TSS | Telephone conference w Patti to discuss 3/8 hearing in LR | 0.25 | $350.00 | $87.50 | 12 |
| 3/6/2013 | TSS | Rcv & rev email from Judy Henry: available hearing dates per scheduling order - We are available on Mon & Wed of next week | 0.15 | $350.00 | $52.50 | 13 |
| 3/6/2013 | TSS | Rcv & rev email from Patti: available hearing dates per scheduling order | 0.1 | $350.00 | $35.00 | 13 |
| 3/6/2013 | TSS | Rcv & rev email from Robertson: available haring dates per scheduling order | 0.2 | $350.00 | $70.00 | 13 |
| 3/6/2013 | TSS | Prepare and send email to All Counsel:  Robert & I have both Monday & Tuesday open | 0.1 | $350.00 | $35.00 | 14 |

**Streetman's Allowed Fees**

| Date | Staff | Description | Hours | Rate | Charges | Pg# Exh A |
|------|-------|-------------|-------|------|---------|-----------|
| 3/7/2013 | TSS | Prepare & send email to All Counsel re LHSE - Based on yesterday's email it appears that counsel for Pinewood , LHSE, & Williams can all be available on Monday.  They are the Counsel who are designated to examine witness.  Since Greg Stephens will be present on Friday & does not intend to participate in ancillary hearings can we agree that the second day will be Monday? Evans has indicated that the Court does not favor Saturday. She has also directed us to agree on the 2nd day | 0.25 | $350.00 | $87.50 | 15 |
| 3/7/2013 | TSS | Prepare and send all counsel:  We have no objection | 0.1 | $350.00 | $35.00 | 15 |
| 3/7/2013 | TSS | Rcv & rev email from Gershner - cannot agree to Monday for completing the motion to appoint trustee at this time.  I hope to able to reach Greg this morning to try to resolve I will notify you asap | 0.2 | $350.00 | $70.00 | 15 |
| 3/7/2013 | TSS | Rcv & rev email from Gershner: Stephens will agree to finishing the motion to appoint tt on Monday if the parties on our side will agree that we can put him on to testify briefly tomorrow.  He will not be able to attend in person Monday | 0.15 | $350.00 | $52.50 | 15 |
| 3/7/2013 | TSS | Rcv & rev email from Henry: No objection from Pinewood | 0.1 | $350.00 | $35.00 | 15 |
| 3/7/2013 | TSS | Rcv & rev email from Robertson - I have cancelled appts for Monday, therefore I will be available | 0.15 | $350.00 | $52.50 | 15 |
| 3/7/2013 | TSS | work on cross-examination of potential witness at trustee hearing | 1.5 | $350.00 | $525.00 | 16 |
| 3/8/2013 | TSS | 7:30 am - 5:00 pm Attend third day of trial | 8.5 | $350.00 | $2,975.00 | 16 |

**Streetman's Allowed Fees**

| Date | Staff | Description | Hours | Rate | Charges | Pg# Exh A |
|---|---|---|---|---|---|---|
| 3/8/2013 | TSS | Long trip back to Crosset due to congested traffic at two construction locations on I-530 | 2.9 | $350.00 | $1,015.00 | 16 |
| 3/8/2013 | TSS | Travel from Crossett to LR | 2.5 | $350.00 | $875.00 | 16 |
| 3/10/2013 | TSS | Conference w Smith to discuss testimony and review trial exhibits | 2 | $350.00 | $700.00 | 16 |
| 3/10/2013 | TSS | Prepare outline to cross examine Kimbro | 0.75 | $350.00 | $262.50 | 16 |
| 3/10/2013 | TSS | Sunday 6am to 12:45pm Review trial notes; locate mark additional trial exhibits for Kimbro & Smith examination | 6.75 | $350.00 | $2,362.50 | 16 |
| 3/10/2013 | TSS | Travel from Crossett to LR | 2.5 | $350.00 | $875.00 | 16 |
| 3/11/2013 | TSS | 8:40am to 7:30pm - less lunch | 10 | $350.00 | $3,500.00 | 17 |
| 3/11/2013 | TSS | Prepare for hearing | 0.5 | $350.00 | $175.00 | 17 |
| 3/11/2013 | TSS | Travel from hotel to Court | 0.3 | $350.00 | $105.00 | 17 |
| 3/11/2013 | TSS | Travel from LR to Crossett | 2.5 | $350.00 | $875.00 | 17 |
| 4/19/2013 | TSS | Read & analyze Judge Evans 15 page opinion directing UST to appoint Independent Trustee | 0.6 | $350.00 | $210.00 | 21 |
| 4/23/2013 | TSS | Rcv & rev email from Patti: Based on Evans order entered our office is working on the appointment of Ch 11 tt in LHSE.  As a party in interest in these proceedings, please contact me w any suggestions or input you have w respect to the appointment of the Trustee | 0.2 | $350.00 | $70.00 | 22 |

**Streetman's Allowed Fees**

| Date | Staff | Description | Hours | Rate | Charges | Pg# Exh A |
|------|-------|-------------|-------|------|---------|-----------|
| 4/23/2013 | TSS | Rcvd & rev email from Patti: I have spoken w you and Renee & Tom before but since the order came out I needed to officially contact all parties in interest. Lance is still on of the people under consideration as is Max Tarbox.  WE have a few others to contact & I am sending the initial paperwork and affidavits to folks to sign and get back to me.  Then Nancy will do a short interview w 3 or 4 folks & make a final decision | 0.2 | $350.00 | $70.00 | 22 |
| 4/24/2013 | TSS | Rcv & rev email from Gershner: I suggested you give strong consideration to Tom Robertson in Ft Smith.  He has good business judgment & resources to handle this case | 0.15 | $350.00 | $52.50 | 23 |
| 4/25/2013 | TSS | Rcv & rev email from Robertson: I would agree w Gershner's suggestion of Tom Robertson.  I believe that Williams mentioned his name to me as someone she respected & thought would be experienced in this type of situation | 0.15 | $350.00 | $52.50 | 23 |
| 4/25/2013 | TSS | Short telephone conversation w Williams to discuss appointment of independent trustee - she thinks UST Will appoint someone outside of the state | 0.2 | $350.00 | $70.00 | 23 |

Total Fees for Thomas Streetman                     **$28,262.50**

**Gibson's Allowed Fees**

| Date | Staff | Description | Hours | Rate | Charges | Pg# Exh A |
|---|---|---|---|---|---|---|
| 2/13/2013 | RBG | Travel from Crossett to LR | 2.5 | $240.00 | $600.00 | 7 |
| 2/13/2013 | RBG | Trial on Motion to appoint tt from 9am to 4:45pm; conf w Tucker & sep conference w Gershner to discuss interest in proposing reorg plan by separate clients | 7.25 | $240.00 | $1,740.00 | 7 |
| 2/14/2013 | RBG | Prepare for hearing | 0.5 | $240.00 | $120.00 | 7 |
| 2/14/2013 | RBG | Travel from LR to Crossett | 2.5 | $240.00 | $600.00 | 7 |
| 2/15/2013 | RBG | Phone conf w Patti re evidentiary ruling on admission of settlement agreement | 0.25 | $240.00 | $60.00 | 8 |
| 2/15/2013 | RBG | Travel from Crossett to LR | 2.5 | $240.00 | $600.00 | 8 |
| 2/18/2013 | RBG | Attend 2nd day trial appoint tt 9am - 5:20pm less lunch | 8.3 | $240.00 | $1,992.00 | 8 |
| 2/18/2013 | RBG | Prepare for hearing | 0.5 | $240.00 | $120.00 | 8 |
| 2/18/2013 | RBG | Travel from LR to Crossett - two hail storms and blinding rain & construction | 2.8 | $240.00 | $672.00 | 8 |
| 3/4/2013 | RBG | Rcv & rev email from Judy: trial of matters pending | 0.2 | $240.00 | $48.00 | 11 |
| 3/7/2013 | RBG | Rcv & rev email from Gershner re hearing on trustee | 0.15 | $240.00 | $36.00 | 14 |
| 3/7/2013 | RBG | 7:30 am - 5:00 pm Attend third day of trial | 8.5 | $240.00 | $2,040.00 | 16 |
| 3/8/2013 | RBG | Long trip back to Crossett due to congested traffic at two construction locations on I-530 | 2.9 | $240.00 | $696.00 | 16 |
| 3/8/2013 | RBG | Travel from Crossett to LR | 2.5 | $240.00 | $600.00 | 16 |
| 3/8/2013 | RBG | Travel from Crossett to LR | 2.5 | $240.00 | $600.00 | 16 |
| 3/10/2013 | RBG | Conference w Smith to discuss testimony and review trial exhibits | 2 | $240.00 | $480.00 | 16 |
| 3/10/2013 | RBG | Travel from hotel to Court | 0.3 | $240.00 | $72.00 | 17 |
| 3/11/2013 | RBG | 8:40am to 7:30pm - less lunch | 10 | $240.00 | $2,400.00 | 17 |
| 3/11/2013 | RBG | Prepare for hearing | 0.5 | $240.00 | $120.00 | 17 |
| 3/11/2013 | RBG | Travel from LR to Crossett | 2.5 | $240.00 | $600.00 | 17 |
| 4/19/2013 | RBG | Read Judge Evans Opinion on appointment of Independent Trustee | 0.6 | $240.00 | $144.00 | 21 |
| 4/23/2013 | RBG | Rcv & rev email from Gershner: re appointment of trustee options | 0.15 | $240.00 | $36.00 | 22 |
| 4/24/2013 | RBG | Rcvd & rev email from Robertson: recommendation for Trustee | 0.15 | $240.00 | $36.00 | 23 |

Total Fees for Robert Gibson    $14,412.00

**Streetman-Gibson Allowed Expenses**

| Date | Staff | Description | Amount | Rate | Charges | Pg# Exh A |
|------|-------|-------------|--------|------|---------|-----------|
| 1/25/2013 | EXPENSE | Long distance telephone call to Williams | 1 | $1.50 | $1.50 | 25 |
| 2/13/2013 | EXPENSE | Travel Mileage BK 2013 - Crossett to LR | 145 | $0.57 | $81.93 | 25 |
| 2/13/2013 | EXPENSE | Travel Mileage BK 2013 - Crossett to LR | 145 | $0.57 | $81.93 | 25 |
| 2/14/2013 | EXPENSE | Travel Mileage BK 2013 LR to Crossett | 145 | $0.57 | $81.93 | 25 |
| 2/18/2013 | EXPENSE | Meal expense & parking 2/18 in LR | 1 | $21.75 | $21.75 | 26 |
| 2/18/2013 | EXPENSE | Travel Mileage BK 2013 - Crossett to LR | 145 | $0.57 | $81.93 | 26 |
| 2/18/2013 | EXPENSE | Travel Mileage BK 2013 LR to Crossett | 145 | $0.57 | $81.93 | 26 |
| 2/19/2013 | EXPENSE | Long distance telephone call to Williams | 1 | $1.25 | $1.25 | 26 |
| 2/22/2013 | EXPENSE | Long distance telephone call to Matt Lindsay | 1 | $1.10 | $1.10 | 26 |
| 2/22/2013 | EXPENSE | Long distance telephone call to Williams | 1 | $0.90 | $0.90 | 26 |
| 3/1/2013 | EXPENSE | Long distance telephone call to Acadia | 1 | $0.70 | $0.70 | 26 |
| 3/4/2013 | EXPENSE | Long distance telephone call to Smith | 1 | $0.40 | $0.40 | 26 |
| 3/4/2013 | EXPENSE | Miller County Circuit Clerk- certified copies of Docket Sheets & Amended complaint | 1 | $140.00 | $140.00 | 26 |
| 3/7/2013 | EXPENSE | USDC - Eastern District of TX - certified copies | 1 | $84.00 | $84.00 | 26 |
| 3/8/2013 | EXPENSE | Travel Mileage BK 2013 - Crossett to LR | 145 | $0.57 | $81.93 | 26 |
| 3/8/2013 | EXPENSE | Travel Mileage BK 2013 LR to Crossett | 145 | $0.57 | $81.93 | 26 |
| 3/10/2013 | EXPENSE | Travel Mileage BK 2013 - Crossett to LR | 145 | $0.57 | $81.93 | 26 |
| 3/11/2013 | EXPENSE | Attend hearing - parking expense | 8 | $1.00 | $8.00 | 27 |
| 3/11/2013 | EXPENSE | Travel Mileage BK 2013 LR to Crossett | 145 | $0.57 | $81.93 | 27 |
| 3/19/2013 | EXPENSE | FedEx documents sent by Miller County Clerk on 3/4/13 | 1 | $32.67 | $32.67 | 27 |
| 4/2/2013 | EXPENSE | Meal expense incurred: 2/13 LR for TSS & RBG ($69); meal exp 3/10/13 LR RSW, TSS & RBG ($49.68); hotel exp incurred 3/10-3/11 LR - TSS ($209.87) ; meal exp incurred 2/13/13 LR - TSS & RBG ($40); meal exp incurred 2/14 LR TSS&RBG ($38.05); meal exp incurred 2/18 LR TSS & RBG ($30.42); hotel exp incurred 3/10 - 11/13 LR RBG ($188.55) | 1 | $625.57 | $625.57 | 27 |

Total Expenses for Streetman-Gibson      **$1,655.17**